[Civ. No. 24509. Second Dist., Div. Three. Dec. 8, 1960.]

GUY N. STAFFORD, Appellant, v. JOHN H. WARE et al.,
Respondents.

Guy N. Stafford, in pro. per., for Appellant.

Walter W. Heil and James W. Edson for Respondents.

BISHOP, J. pro tem.*—Abundant authorities, garnered from the appellate courts of this state, are available in support of either an affirmance or a reversal of the summary judgment from which the appeal is taken. The affidavit presented in support of the motion for the summary judgment was insufficient for the purpose, but was sufficient to attract attention to a former judgment that furnished an adequate defense of res judicata, provided only judicial notice may be taken of the prior case. We have concluded that judicial notice may be taken, and are affirming the judgment.

Before entering the field of "judicial notice," we make sure just what we must know to answer the question: under what circumstances is the defense of res judicata possible? We are told this, in *French* v. *Rishell* (1953), 40 Cal.2d 477, 479 [254 P.2d 26, 27]: "The doctrine of res judicata is applicable where the identical issue was decided in a prior case by a final judgment on the merits and the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." A slightly broader statement of the principle was stated in *Wynn* v. *Treasure Co.* (1956), 146 Cal.App.2d 69, 78 [303 P.2d 1067, 1073]: "The doctrine of res judicata is that an existing final judgment on the merits of a cause rendered by a court of competent jurisdiction is, in all subsequent actions, conclusive of the rights of the parties thereto and of their privies on all material issues which were or might have been determined. (*French* v. *Rishell*, 40 Cal.2d 477, 479 [254 P.2d 26]; *Dillard* v. *McKnight*, 34 Cal.2d 209, 213 [209 P.2d 387, 11 A.L.R.2d 835]; *Bliss* v. *Security-First Nat. Bank*, 81 Cal.App.2d 50, 58 [183 P.2d 312].) The application of the principles in a given case depends on affirmative answers to these questions: Was the issue decided in prior litigation identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the judgment is asserted a party or in privity with the party to the prior litigation?"

In order that the judgment in a previous action may be used to establish the defense of res judicata, then, the issues in that action must be known to be identical, at least in part,

---

*Assigned by Chairman of Judicial Council.

with the issues in the case where the defense is raised, and the judgment must be one on the merits. To determine whether these conditions exist, we must know at least the terms of the judgment. If the judgment does not reveal the issues, as it may but would not where its terms consisted for example of no more than "It is adjudged that the plaintiff take nothing," the issue-forming pleadings would have to be known. Either the judgment or the pleadings could become known by introducing them in evidence. Our crucial question in this case remains: May judicial notice be taken of them?

In an endeavor to find an answer, we may not limit our attention to section 1875 of the Code of Civil Procedure where, since 1872, the Legislature introduces a number of subjects with the declaration that: "Courts take judicial notice of the following facts." Looking over those "facts" we find no justification for the rules which we find stated with great conflict in the cases. This is not surprising, for while we do not doubt it proper for the Legislature to enact laws respecting evidence, that subject is one over which the courts do exercise power to establish rules, and, so far, the Legislature has not attempted to say: "These are the only facts of which judicial notice may be taken."

We are not going to come anywhere near listing completely the cases that say, without recognizing any exception, that a court may not take judicial notice of another case, though pending, or having been pending, before it. We quote, first, a sentence from one opinion written before the enactment of section 1875: "In the trial of one case the Court can no more take judicial notice of the record in another case in the same Court, without its formal introduction in evidence, than if it were a record in another Court; much less can this Court take notice of the existence of a record not introduced in evidence in the Court below." (*People* v. *De La Guerra* (1864), 24 Cal. 73, 78.) Section 1875 evidently worked no change in the rule for in *Ralph* v. *Hensler* (1893), 97 Cal. 296, 304 [32 P. 243, 244], we find it said: ". . . it is too clear to admit of question that the judicial knowledge of the court does not extend to the contents of its records in former actions or proceedings."

The two cases from which we have just quoted were cited in *Sewell* v. *Price* (1912), 164 Cal. 265, 273 [128 P. 407, 410], following this pronouncement: "It is well settled that courts cannot in one case take judicial notice of their records in another and different case." This case of *Sewell* v. *Price* has

been cited, on the point we are considering, some eleven times, of which we note the two most recent. In *Wolfsen* v. *Hathaway* (1948), 32 Cal.2d 632, 638 [198 P.2d 1, 5], we find it placed following this sentence: "The authority of a court to take judicial notice of its own records 'is limited to proceedings in the same case.'" The Sewell case is further cited, along with *Wolfsen* v. *Hathaway, supra,* and eleven others, in *Popcorn Equipment Co.* v. *Page* (1949), 92 Cal. App.2d 448, 452 [207 P.2d 647, 650] in support of this declaration: "The arbitrators could not, nor could the court, pass upon the question whether the dismissal of the former action operated as a bar to the consideration of the matter submitted to the arbitrators unless such files were offered in evidence, since a court will not take judicial notice of its own records in cases other than those in the case on trial."

There are a number of cases that express the same principle, but with a recognition that exceptions are possible. Just before the sentence that is quoted from *Wolfsen* v. *Hathaway, supra,* in the immediately preceding paragraph, the court made this statement with its implicit admission of possible exceptions: "It is the general rule that 'the court will not take judicial notice of other actions, not even those pending or concluded in the same court.' (*Johnston* v. *Ota,* 43 Cal.App. 2d 94, 96 [110 P.2d 507].)" In *Popcorn Equipment Co.* v. *Page, supra* (1949), 92 Cal.App.2d 448, 453 [207 P.2d 647, 650], also, after making the unequivocal statement quoted above, the court continued: "Only in exceptional cases will the court depart from the general rule, for example in order to avoid a resulting unreasonable hardship."

We find the exception expressed in other terms. Here, again, we are not listing all the cases, but making use of a sufficient number to illustrate the "no, except" doctrine. An interesting one is *City of Los Angeles* v. *Abbott* (1932), 217 Cal. 184, 192-193 [17 P.2d 993], in which two previous opinions had been written, one in the District Court of Appeal (300 P. 854), and a second in the Supreme Court (12 P.2d 19). Without noting the precise question before the court in this "hard case" this is a part of what was said: "Respondent further contends that this court cannot judicially notice the injunction judgment under the authority of *Reed* v. *Cross,* 116 Cal. 473 [48 P. 491]; *Sewell* v. *Johnson,* 165 Cal. 762 [134 P. 704, Ann.Cas. 1915B 645], and other cases. Although those cases undoubtedly indicate that ordinarily the appellate court will not take judicial notice of its judg-

ment in other cases, that rule has no application to the peculiar facts of the present case. The reason for the rule prohibiting the court from taking judicial notice of its judgment in another case is obvious. Ordinarily it would be unfair to a respondent to permit the appellant to rely on a judgment not contained in the record because the respondent has had no opportunity to argue its legal effect before the trial court, and to introduce, if he can, refuting testimony. Here there is no dispute but that the judgment involved was presented to the trial court and its legal effect considered by that court in rendering its judgment. The rule precluding the court from taking judicial notice of its judgment in another case is not an inflexible one, and has several exceptions. . . . The fact that such an exception exists indicates that the rule is not based on lack of power but is a rule of expediency, to be applied or refused application as the equities and justice of the cases require.''

Exceptions to the general rule, are also noted in *Hogan* v. *Hogan* (1955), 131 Cal.App.2d 281, 284 [280 P.2d 64, 66]: ''While ordinarily a court takes judicial notice of the files in the same case, it does not usually do so of its files in another case in the same court . . . although this is a rule of convenience, and it may do so to prevent injustice.''

In affirming a judgment for the defendant after a demurrer had been sustained without leave to amend, the Supreme Court, in *Willson* v. *Security-First Nat. Bank* (1943), 21 Cal. 2d 705, 710-711 [134 P.2d 800, 804] disagreed with appellant's contention that judicial notice of accounting proceedings should be taken, saying: ''The defense of res judicata was specifically raised by demurrer. Generally a court takes judicial notice only of proceedings in the same case. . . . But in some circumstances judicial notice will be taken of proceedings in other cases in the same court in the interest of justice. (*Hammell* v. *Britton,* 19 Cal.2d 72 [119 P.2d 333]; *Johnston* v. *Ota,* 43 Cal.App.2d 94 [110 P.2d 507].)''

Before beginning a consideration of what we group as a third class of cases, we should note two distinctions and weigh the value of the exceptions that have been mentioned as a necessary basis for a better evaluation of those cases. The first distinction that we would make is the obvious one, which we find overlooked at times, between ''judicial notice of'' and ''being put on notice.'' In *Popcorn Equipment Co.* v. *Page, supra* (1949), 92 Cal.App.2d 448, 454 [207 P.2d 647, 651] the point was expressed this way: ''There is a vast

difference between judicial notice and judicial knowledge. The party on whom rests the burden of establishing a fact of which the court may take judicial notice is not relieved of the necessity of bringing the fact to the knowledge of the court.'' To emphasize the rule we restate it in different words: ''Judicial notice of a judgment'' and ''calling a judgment to the notice of, that is, to the attention, of the court,'' are two different things. In a proper case a court can legally take judicial notice of a prior proceeding, however it may be called to its attention. The court's power is not conferred by the actions of the parties, but is inherent. A party relying upon the court's taking of judicial notice is, however, in no position to complain that it has not done so, if he fails to call it to the court's attention.

A second distinction that should be kept in mind is also obvious; it is the distinction between pleading and proof. In *Weil* v. *Barthel* (1955), 45 Cal.2d 835, 836 [291 P.2d 30], we have another case where a judgment was under attack which followed the sustaining of a demurrer without leave to amend. We gather, from the statement in the opinion that ''The complaint includes the official record of the judgment, but its terms are pleaded by a statement of their legal effect,'' that the judgment itself was not attached to, or otherwise made a part of the complaint, but that, nevertheless, it was sufficiently pleaded to satisfy the purposes of that initial pleading. The Supreme Court, therefore, had a sound basis for its conclusion (p. 837): ''Since the judgment was pleaded it is unnecessary to consider whether the doctrine of judicial notice is here applicable. We do not decide such question.'' This statement is to be understood as meaning what it says. The question here was the sufficiency of the facts alleged in a complaint. The question was not: Must the facts sufficiently alleged be proved or should the court take judicial notice of them? The Supreme Court might have ruled, as it had in its first opinion filed in the case (279 P.2d 544), that it was a case for judicial notice. Such a ruling would, we venture, have been quite appropriate; but it was neither necessary nor made.

We find difficulty in understanding, from what has been said in the cases noted up to this point, just what exceptions to the ''general rule'' they recognize. The first exception—to avoid unreasonable hardship—we do understand. It is illustrated in such cases as *Sewell* v. *Johnson* (1913), 165 Cal. 762 [134 P. 704, Ann.Cas. 1915B 645], (not to be confused

with *Sewell* v. *Price, supra* (1912), 164 Cal. 265 [128 P. 407]).
It does not authorize an exception in our case, however.
Both parties have shown their familiarity with the previous
judgment which the defendants claim affords them the de-
fense of res judicata. There is no suggestion that a certified
copy was not readily obtainable, to be made a part of the
affidavit filed in support of the motion for the summary judg-
ment, as was done in *Stafford* v. *Yerge* (1954), 129 Cal.App.
2d 165 [276 P.2d 649], or that a subpoena would not have pro-
duced it, if desired, in support of the defense, to be first tried
and decided, pursuant to section 597 of the Code of Civil
Procedure.

Our difficulty lies in knowing when an exception should
be made to the general rule that a court will not take note of
another proceeding, "in the interest of justice," and when
the general rule should be considered only "a rule of con-
venience." If a controversy in the courts will be decided one
way if the court takes judicial notice of a prior proceeding,
it must be because justice requires such a decision. To de-
termine, then, whether judicial notice should be taken, the
prior decision must be weighed. Is the rule, then, this? If
asked to consider a prior decision in making a ruling in a
current one, first take a peek at the prior judgment. If it
will affect the outcome of the case not yet decided, take
judicial notice of it; if not, do not. This seems to us to
nullify the general rule—and explains, we submit, why many
of the third class of cases were decided as they were.

The same observations may properly be made concerning
the "rule of convenience," if those words mean that it is to be
applied in a "proper case." How do you know if it is proper
not to take judicial notice of a prior judgment without first
taking notice of it? The general rule becomes no more than
this: The courts will take judicial notice, if after doing so,
they find that it was a proper case for doing so.

Perhaps the "rule of convenience" means that it is not to
be applied if it is not convenient? Now that the Los Angeles
County Clerk is keeping many of the old records on tape
microfilm, to read which requires a trip to a special machine, is
the task of looking at one of these old records to be so incon-
venient that judicial notice will no longer be taken of it?
Surely no judge is to take judicial notice or not take judicial
notice of a record depending on whether it is convenient for
him to do so.

Lip service continues to be paid this "general rule," but we

cannot interpret many, more recent, cases as really observing it. We approve of the trend, but prefer to say that the general rule is no more except in those cases where to take judicial notice would be to take unfair advantage of one of the parties. Here again we do not report all of the possible cases, but enough to prove that there are a respectable number reaching this conclusion: If the trial court and the adverse party are put on notice that there is a prior proceeding, that has a bearing on the current one, judicial notice of the prior proceeding may be taken.

We began with *Roberts* v. *Roberts* (1927), 81 Cal.App. 499, 501 [253 P. 1112, 1113], where an affidavit, in support of a motion for a change of venue, claimed to dispose of plaintiff's case. The court observed: ''The record does not contain a copy of the judgment nor was the latter made a part of the affidavit except by reference. Such reference, however, was sufficient to warrant the trial court in taking judicial notice thereof.'' The *appellate court,* however, did not take judicial notice of it, but *presumed* it supported the finding impliedly made by the trial court against the moving party. (Was it possible that this was because it was inconvenient for the northern court to take judicial notice of a Los Angeles County judgment? Perhaps justice did not require it?)

The case just noted was relied upon in *Mann* v. *Mann* (1946), 76 Cal.App.2d 32, 40 [172 P.2d 369, 374], in support of the sentence beginning: ''The divorce proceedings were brought to the judicial notice of the court by the allegations in appellant's answer reading,'' and ending with a recital of the provisions of the answer, none of them pretending to be a quotation. A reading of the case convinces us that the words quoted meant that judicial notice of the proceedings was taken, not just that the court's attention was drawn to them. Allegations in an answer, of course, are themselves proof of nothing.

A variation of the usual question is voiced in these words taken from *Christiana* v. *Rose* (1950), 100 Cal.App.2d 46, 52-53 [222 P.2d 891, 895]: ''Under the facts here involved, *we* are permitted to take judicial notice of the prior appeal in the wrongful death action. . . . While it has been stated, on occasion, that the courts will not take judicial notice of other actions . . . that rule has many exceptions. . . . In the instant case the appellant in his complaint referred to the wrongful death action and specifically alleged the date of the case, its file number in the clerk's office, and the date the ap-

pellate court affirmed. Under such circumstances, there can be no doubt but that *this court* may look at and consider the records in the wrongful death action.'' (Emphasis added.) Had we only this case to consider, we would look at *Ware* v. *Stafford* (1957), 148 Cal.App.2d 840 [307 P.2d 950], and the record that it considered, without the necessity of defending our action in so doing.

The appeal in *Thomson* v. *Honer* (1960), 179 Cal.App.2d 197 [3 Cal.Rptr. 791] was also from a summary judgment. We read (p. 203 of 179 Cal.App.2d, 795 of 3 Cal.Rptr.): ''The files of the superior court in the Worley case were properly before the trial court for consideration on the motion. They were adequately referred to in the affidavits. Although there is a conflict in the decisions, it has been held that a trial court is authorized, under certain conditions, to take judicial notice of the condition of the records of a case which is actually pending in its court.''

We offer two quotations from cases involving appeals from judgments following the sustaining of demurrers to complaints without leave to amend. The *decisions* are not of particular interest to us, therefore, but the slant of the court's thought is. We quote from *Alisal Sanitary Dist.* v. *Kennedy* (1960), 180 Cal.App.2d 69, 80 [4 Cal.Rptr. 379, 387]: ''If we are required to take judicial cognizance of the Ambrosini judgment and record, they have been appropriately brought to the attention of the court in defendants' brief irrespective of the reference in the complaint.'' The court decides, however, from what it learns here and there, of the prior case, that no occasion had arisen in the case before it, to make an exception to the general rule that judicial notice will not be taken of a previous judgment. In other words, we interpret the decision, justice did not require it, nor was it an occasion for applying the rule of convenience.

We quote this sentence from *Legg* v. *United Benefit Life Ins. Co.* (1960), 182 Cal.App.2d 573, 580 [6 Cal.Rptr. 73, 78]: ''In raising the issue of res judicata on the face of her complaint and relying on several prior actions . . . plaintiff has not only directly *allowed* the plea of res judicata to be raised on demurrer by defendant . . . but has *permitted* the trial court to take judicial notice of the actions referred to by her even though the proceedings therein may not be in the same case.'' (Emphasis added.)

Before stopping the parade of cases we should call attention to *Johnston* v. *Ota* (1941), 43 Cal.App.2d 94 [110 P.2d 507],

because it is so simple, has been cited so many times, and is so inconsistent with the more recent cases. A plea of res judicata had been made by the answer to which a copy of the judgment relied on was attached as an exhibit. On its own motion the trial court, as authorized by section 597, Code of Civil Procedure, began with the trial of this issue, and resolved it in defendant's favor. The judgment roll of the case relied upon, "lay upon the counsel table within the view of the court." It was not, however, introduced in evidence, and the resulting judgment was reversed because as the court stated (p. 97 of 43 Cal.App.2d, p. 509 of 110 P.2d), "There was no circumstance in the instant case that would have justified the court's taking judicial notice of the judgment pleaded or of the proceedings which preceded it."

We have reached three conclusions. First, the case law on the subject is in hopeless conflict. Second, the Legislature should do, with respect, at least to the plea of res judicata, what it has done in section 433 of the Code of Civil Procedure with respect to "another action pending": Authorize the court to take judicial notice of it, provided an affidavit *invokes* such notice. Third, as the trial court's attention was called to the prior action and judgment by the defendants and its existence was commented on by the plaintiff it was the common-sense thing for the trial court to take judicial notice of it, and we presume that it did so. So we shall proceed to do the same.

It was quite convenient to get hold of the superior court files, the one in this case and the one in the previous case, identified in the affidavit presented in support of the summary judgment, but whose contents were not placed before the court in any competent way. See, respecting the competency of the maker of the affidavit to testify concerning the contents of the file: *Gardenswartz* v. *Equitable etc. Soc.* (1937), 23 Cal.App.2d Supp. 745, 749-750 [68 P.2d 322, 324]; *Murphy* v. *Kelly* (1955), 137 Cal.App.2d 21, 28 [289 P.2d 565, 569]; and *Family Service Agency of Santa Barbara* v. *Ames* (1958), 166 Cal.App.2d 344, 349-350 [333 P.2d 142, 144].

We will not double the length of this opinion by going into the details of the pleadings in the files. Beginning with that in this case we note that the complaint was filed June 24, 1957; that it deals with an oil lease dated April 15, 1948, from the defendants to plaintiff, containing this paragraph: "If no production is obtained from said well within a period of

six months from the effective date of the permits hereinbefore set forth, then this indenture shall terminate''; that within the six months period and thereafter, the defendants encouraged the plaintiff to keep on trying, which he did, at considerable expense; that on September 17, 1954, plaintiff was notified to put the well on production by December 1, 1954, or the lease would terminate, and plaintiff have no more rights.

Based on these alleged facts, plaintiff sought a judgment declaring, in effect, that he still had a right to attempt to put the well on production; to an injunction to protect him from defendants' interference; and to a judgment for $65,000 for expenditures made in an endeavor to carry out his covenants under the lease. In their answer the defendants averred that in the case we are about to consider an adverse judgment was entered.

Reading the file in the previous case, brought by the present defendants against the present plaintiff (in order to see whether or not judicial notice should be taken of it, in order to do justice); we find the action was commenced April 4, 1955. The first cause of action, as amended, May 4th, refers to the lease made the basis of plaintiff's complaint; alleges that plaintiff wholly failed to perform, and never did place a well on production; and that, by its terms, and the notices given the present plaintiff on September 17 and 19, 1953, all his rights in the lease were terminated. The court found these allegations to be true and on May 14, 1956, over a year before the present action was begun, entered a judgment that the lease and all rights claimed thereunder by the defendants ''are cancelled and terminated.'' Unimpressed by appellant's argument on this appeal that this judgment should be disregarded because based upon an impossibility, that is, that the lease had terminated three times, we determine that it constitutes a good defense to the present action; that judicial notice was properly taken of it; and that the judgment should be affirmed.

It is affirmed.

Vallée, Acting P. J., and Ford, J., concurred.

A petition for a rehearing was denied December 30, 1960, and appellant's petition for a hearing by the Supreme Court was denied January 31, 1961.